UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BILL ROMANOWSKI,

        Plaintiff,

    v.

RNI, LLC, et al.,

        Defendants.

_____/

No. C 06-6575 PJH

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT IN PART
AND DENYING IT IN PART**

      Defendants' motion for summary judgment came on for hearing before this court on January 16, 2008. Plaintiff appeared by his counsel Daniel R. Price, and defendants appeared by their counsel Robert Grasso. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion in part and DENIES it in part.

**BACKGROUND**

      This is a case alleging trademark infringement, misappropriation of images and trademarks, and computer fraud. Plaintiff Bill Romanowski ("Romanowski") is a resident of California who formerly played professional football with, among other teams, the Oakland Raiders. He has also worked as a television football commentator. He is familiarly known as "Romo" (not to be confused with Tony Romo, of the Dallas Cowboys football team).

      Defendant RNI, LLC, is an Arizona limited liability company that was formed in May 2004 by Romanowski and defendant Tom Incledon ("Incledon"), an Arizona nutritional expert. Romanowski and Incledon formed RNI under the terms of an LLC operating agreement, which sets forth the rights and responsibilities of the members of the LLC. The operating agreement provides that Romanowski and Incledon are 50% members of RNI,

1   and that Incledon is the managing member.

2      RNI was in the business of selling nutritional supplements – in particular, a product

3   called Neuropath, developed by Incledon.  The parties sold Neuropath under the trade

4   name "Pure Romo" or "Pure Romo Nutrition," and also using the slogan, "Supplement Your

5   Success."  The parties also developed a website, www.pureromonutrition.com, through

6   which to sell Neuropath.

7      Romanowski alleges that from about May 2004 until about August 2006, he

8   "permitted" the use of his "Romo marks" by RNI.

9      In June 2004, Romanowski filed a trademark registration application with the U.S.

10  Patent and Trademark Office, through one of his business entities, Outside 53, LLC,

11  seeking to register the marks "PureRomo," "Neuropath," and "Supplement Your Success."

12     In June 2006, Romanowski incorporated "Pure Romo Nutrition, Inc." in California.

13  Incledon was not listed as an officer, director, or shareholder.  Romanowski issued all the

14  stock to himself.

15     Defendants claim that on July 26, 2006, Outside 53, LLC, assigned all its interests in

16  the trademarks being used by RNI – including "PureRomo," "Neuropath," and "Supplement

17  Your Success" – to RNI.

18     Romanowski asserts that in July 2006, he requested that Incledon help set up a new

19  laptop computer that he (Romanowski) had recently purchased.  According to

20  Romanowski, Incledon set up the computer and Romanowski's personal e-mail account so

21  that a copy of every e-mail sent to Romanowksi at that address, and every e-mail that

22  Romanowski sent from that address, would also be forwarded to accounts on a server

23  hosted, owned, operated, and/or controlled by RNI.  Romanowski alleges that this copying

24  of e-mails, which contained private and proprietary business information, went on from July

25  12, 2006, to October 10, 2006, when he learned about it, and took steps to eliminate the

26  RNI server as a recipient of his e-mails.

27     As of August 2006, Romanowski was representing himself as the "Chief Executive

28  Officer" of Pure Romo Nutrition, the company located in Tempe, Arizona, and was

2

1    (according to defendants) attempting to negotiate terms with Incledon under which Incledon

2    would work for Romanowski's California corporation.  However, according to defendants,

3    the negotiations broke down, and Romanowski then suggested that RNI file for bankruptcy.

4

5    Romanowski alleges that in August 2006, he became "disassociated" with RNI, and

6    demanded that defendants cease and desist the use of the "Romo Marks" and "Romo

7    Images" (generally described in the complaint as "Plaintiff's name, likeness and/or

8    derivatives and non-material variations of either").

9    Romanowski claims, however, that despite this demand, defendants continued to

10   operate the www.pureromonutrition.com, website, which markets and sells products that

11   use the "Romo marks" and "Romo images."  Defendants, on the other hand, contend that

12   RNI is the assignee of the "Romo marks," and therefore has the right to use them.

13   Romanowski filed this action on October 20, 2006, asserting 12 causes of action –

14   false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a); violation of

15   the federal anti-dilution statute [Lanham Act], 15 U.S.C. § 1125(c); violation of the

16   Electronic Communications Privacy Act, 18 U.S.C. §§ 2707 and 2520, et seq.; violation of

17   the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.; common law trademark

18   infringement and unfair competition; trademark dilution, in violation of California Business &

19   Professions Code § 14330; trademark infringement, in violation of Business & Professions

20   Code § 14335(a); unfair competition, in violation of Business & Professions Code § 17200;

21   invasion of privacy, under California Civil Code § 3344; common law invasion of privacy

22   (ROMO e-mail); common law invasion of privacy (ROMO Marks and Images); and

23   conversion.

24   Incledon moved to dismiss for lack of personal jurisdiction, and both defendants

25   moved to transfer venue to the District of Arizona.  In an order issued on January 31, 2007,

26   the court found that while it had jurisdiction over RNI (which defendants did not dispute), it

27   had jurisdiction over Incledon only with regard to the ninth through twelfth causes of action.

28   The court denied the motion to transfer.

3

1    Defendants now move for summary judgment on all twelve causes of action.

2                                    **DISCUSSION**

3    A.    Legal Standard

4        Summary judgment is appropriate when there is no genuine issue as to material

5    facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

6    Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

7    Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

8    is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

9        A party seeking summary judgment bears the initial burden of informing the court of

10   the basis for its motion, and of identifying those portions of the pleadings and discovery

11   responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

12   v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

13   at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

14   than for the moving party.  On an issue where the nonmoving party will bear the burden of

15   proof at trial, the moving party can prevail merely by pointing out to the district court that

16   there is an absence of evidence to support the nonmoving party's case.  Id.

17       If the moving party meets its initial burden, the opposing party must then set forth

18   specific facts showing that there is some genuine issue for trial in order to defeat the

19   motion.  See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.  If the nonmoving party fails

20   to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a

21   matter of law."  Celotex, 477 U.S. at 323.  Regardless of whether plaintiff or defendant is

22   the moving party, each party must "establish the existence of the elements essential to [its]

23   case, and on which [it] will bear the burden of proof at trial."  Id. at 322.

24       The court is required to view the evidence in the light most favorable to the

25   nonmoving party.  United States v. City of Tacoma, 332 F.3d 574, 578 (9th Cir. 2003).

26   However, a trial court can consider only admissible evidence in ruling on a motion for

27   summary judgment.  See Fed. R. Civ. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854

28   F.2d 1179, 1181 (9th Cir. 1988).  Authentication is a "condition precedent to admissibility,"

                                           4

1  and this condition is satisfied by "evidence sufficient to support a finding that the matter in

2  question is what its proponent claims." Fed.R.Evid. 901(a). The Ninth Circuit has

3  repeatedly held that unauthenticated documents cannot be considered in a motion for

4  summary judgment.  <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002).

5      Self-serving affidavits will not establish a genuine issue of material fact if they fail to

6  state facts based on personal knowledge or are too conclusory.  <u>Rodriquez v. Airborne</u>

7  <u>Express</u>, 265 F.3d 890, 902 (9th Cir. 2001).  In addition, deference to the non-moving party

8  has some limits.  Thus, a plaintiff cannot rest on the allegations in the pleadings to

9  overcome a motion for summary judgment.  <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d

10  1044, 1049 (9th Cir. 1995); <u>Ghebreselassie v. Coleman Sec. Serv.</u>, 829 F.2d 892, 898 (9th

11  Cir. 1987).

12  B.      Defendants' Motion

13      Defendants seek summary judgment on all twelve causes of action, which they have

14  divided into three categories – trademark infringement claims, or claims that RNI and

15  Incledon are unlawfully using certain trademarks owned by Romanowski (first through sixth

16  causes of action); "Romo images" claims, or claims that RNI and Incledon used

17  Romanowski's name, likeness, and image without authorization in RNI's business since

18  Romanowski's "disassociation" from RNI in August 2006 (seventh and eighth causes of

19  action); and computer-fraud claims, or claims that RNI and Incledon engaged in wrongful

20  conduct while manipulating Romanowski's personal computer (ninth through twelfth causes

21  of action).

22      1.      The parties' evidence

23      Defendants included no declarations in support of their opening memorandum of

24  points and authorities, but rather submitted a "statement of facts in support" of the motion,

25  and attached to that statement, 22 "exhibits" (Exhibits A-V), all unauthenticated.  In his

26  opposition, Romanowski pointed out that defendants had not supported their motion with

27  admissible evidence.  With the reply to the opposition, defendants included a declaration

28  from their attorney Robert Grasso, purporting to authenticate Exhibits B, C, F, G, I, O-Q, T,

and U, and also purporting to authenticate additional exhibits filed with the reply (Exhibits 3-7 and 19).  They also included a declaration from Incledon, purporting to authenticate Exhibits A, D, E, H, J-N, S, and V, and also purporting to authenticate additional exhibits filed with the reply (Exhibits 8-18, 20, and 21).

With these two declarations, defendants made an attempt to authenticate all the exhibits, by stating that each document attached as an exhibit is a "true and correct copy."  However, a number of the exhibits still are not admissible.  For example, Exhibit B (excerpt from the Romanowski deposition transcript), Exhibit C (excerpt from the Incledon deposition transcript), and Exhibits U and 19 (excerpts from the Kelly Gray deposition transcript) are not admissible because they are not accompanied by a reporter's certification.  See Orr, 285 F.3d at 774.

In addition, some of the exhibits purportedly authenticated by Incledon are not admissible as he was not the author of the documents, did not receive them from the author, and establishes no personal knowledge of the documents.  See id. at 777-78.  These include Exhibits 16, 17, and 18, which are all copies of letters from Incledon's attorney Shane Freedman to Floyd Mandell (one of Romanowski's attorneys).

Defendants' presentation of evidence, particularly in the moving papers, is also quite confusing.  Defendants cite to the "statement of facts," and it is only in that statement of facts that the actual exhibit is referenced.  It is then necessary to look at the particular exhibit, and then look at the declaration (either Grasso or Incledon) filed with the reply, in order to determine whether that exhibit is admissible.  In some instances  defendants explain the significance of an exhibit accurately in the briefs, but in other places they do not.  It is therefore necessary to read each exhibit carefully to see whether it supports the statement in the memorandum of points and authorities.  In addition, the "statement of facts" itself was filed in violation of Civil Local Rule 56-2.

Romanowski presents a smaller quantity of evidence, and much of that is in the form of declarations.  However, six of the exhibits (Exhibits A6-A11) attached to the declaration by Romanowski's attorney Daniel Price, in which Mr. Price purports to

authenticate various excerpts from the Incledon deposition, are also inadmissible. None of these excerpts is admissible, as none includes a reporter's certification. They do not even include the caption page showing the case caption and the date and location of the deposition.

      2.     The parties' arguments

Defendants argue that summary judgment should be granted as to all causes of action alleged in the complaint. Rather than address each claim and its elements separately, however, defendants divide the claims into three categories, and argue that each group of claims should be dismissed for lack of evidence.

      a.     Trademark infringement claims

In the first through sixth causes of action, Romanowski alleges various claims relating to trademark infringement. These claims all involve allegations that defendants have been unlawfully using trademarks "owned" by Romanowski since his "disassociation" from RNI in August 2006. Defendants argue that summary judgment should be granted as to all six of these causes of action.

Defendants assert that Romanowski identified the marks at issue in his deposition as "Neuropath," "Pure Romo," and "Supplement Your Success," and testified that he did not know if he was suing over any other trademarks. Defendants argue, however, that the undisputed evidence shows that Romanowski did not own or use, and currently does not own or use, the trademarks allegedly infringed.

Specifically, defendants claim that Outside 53, LLC, not Romanowski, owned these trademarks; that Romanowski does not currently own any of these registered trademarks, as Outside 53, LLC, assigned all of its interests in the trademarks to RNI on July 26, 2006; that RNI – not Romanowski – used these trademarks to sell or promote goods or services; that Romanowski does not currently use any of these registered trademarks to sell or promote goods or services in commerce; that Romanowski does not intend to use the mark "Pure Romo" in the future; that Romanowski's California company stopped using the mark "Pure Romo Nutrition" because of the "bad karma" associated with it; and that Romanowski

United States District Court

For the Northern District of California

1  does not know if he objects to RNI using these three trademarks.

2        Thus, defendants assert, what Romanowski is actually doing is suing RNI and

3  Incledon for "infringing" on RNI's own trademarks, which Romanowski never owned in the

4  first place.  Unfortunately, with the exception of the documents evidencing trademark

5  registration and assignment, the only evidence defendants provide to support their

6  arguments is the inadmissible Romanowski deposition testimony.

7        Defendants also argue that Romanowski has disclosed no evidence that RNI's use

8  of its own trademarks, which it has used in commerce since 2004, is likely to cause

9  confusion or to deceive the public concerning the affiliation of RNI's products.  Defendants

10  contend that the three trademarks at issue have, since their first use in interstate

11  commerce, been associated with RNI.

12        Defendants also assert that Romanowski has disclosed no evidence of any

13  damages that <u>he</u> sustained as a result of RNI's use of its own trademarks.  They note that

14  Romanowski has not disclosed a damages expert, and therefore cannot meet another

15  critical element of his claim.

16        Finally, defendants argue, Romanowski has no evidence that Incledon personally

17  infringed on any trademarks.  Defendants note that Incledon does not claim to own any

18  trademarks or to use any such trademarks in interstate commerce, and that he has simply

19  operated the business of RNI as its founding member.

20        In opposition, Romanowski makes four main arguments.  First, he contends that he

21  has the requisite interest in the "Romo marks" to bring the various claims for infringement

22  set forth in the complaint.  He claims that these "Romo marks" and "Romo images" are his

23  "property interests," and that he owns the marks because Outside 53, LLC, his solely-

24  owned LLC, was the owner/applicant for registration of the "PureRomo" mark.  He claims

25  that because he is the sole "shareholder" of Outside 53, LLC, he can assert the same rights

26  to the "Romo marks" as Outside 53, LLC.

27        Moreover, he asserts, none of his claims are based on the premise that he is the

28  <u>registered</u> owner of the "Romo marks," or that there have been any violations related to a

8

registered mark, but rather on the premise that he has an "interest" in the marks. He claims that under the Lanham Act, any person has standing to assert a claim "who believes that he or she is or is likely to be damaged."

Romanowski's second argument is that RNI never acquired an ownership interest in the "Romo marks" sufficient to preclude liability for infringement. He contends that the only way RNI could have acquired such an interest would have been either through a license or through an assignment.

Romanowski claims that he licensed the use of the "Romo marks" and "Romo images" to RNI pursuant to an "oral license agreement." He asserts that because he and Incledon understood, at the time RNI, LLC, was formed, that RNI would benefit if Romanowski would "lend" the company his rights to use "Pure Romo" and other marks and names that incorporate the word "Romo," he orally agreed with Incledon to provide "endorsement services" to RNI. He claims that RNI thereafter used these "endorsement services," which included developing a dba for RNI – "Pure Romo Nutrition."

Romanowski argues, however, that the oral license agreement was terminated prior to the infringing use, and that with that termination, all rights of RNI to use the "Romo marks" or "Romo images" were lost. Romanowski claims that he informed Incledon of his intent to terminate the license agreement, and that "by the terms of the License Agreement, the License Agreement was itself terminated and all rights granted pursuant to that License Agreement were thereupon terminated." According to Romanowski, the fact that he no longer was willing to permit RNI to use his name is shown by the fact that he named and incorporated his new company "Pure Romo Nutrition, Inc."

In addition, he asserts that on September 28, 2006, his attorney wrote Incledon's attorney, issuing "a formal demand that your client cease and desist any and all further use of ROMO, any marks or names that include ROMO, and any and all other indicia of Bill Romanowski's persona and right to publicity." Thus, Romanowski argues, any rights to use "Pure Romo" and any other marks or names that incorporate "Romo" which defendants may have had pursuant to the license agreement were terminated prior to the infringement

9

1     alleged in the complaint.

2          With regard to the question whether defendants acquired any rights by assignment,

3     Romanowski claims there was no assignment of any kind relating to the "Romo images,"

4     and no "valid and subsisting" assignment of the "Romo marks."  Romanowski contends that

5     defendants do not argue that such images were the subject of the assignment, and

6     therefore, that defendants have no interest whatsover in any "Romo images."

7          As for the assignment of the "Romo marks," Romanowski claims that the purported

8     assignment was invalid and unenforceable, and is therefore void.  But, he asserts, even if

9     one assumes that the assignment was valid, the assignor was Outside 53, LLC, which he

10    claims was his own licensee, as he was the owner of the marks.  Romanowski claims in his

11    declaration that he himself purchased the right to the "Pure Romo" mark by giving $10,000

12    to the woman who allegedly came up with the idea, and that he is thus the original owner of

13    that mark, and Outside 53, LLC, is a licensee, pursuant to another "oral license

14    agreement."  He claims that his purported oral license gave Outside 53, LLC, no

15    authorization to assign any rights in the marks.

16         Alternatively, he argues, following the termination of the license agreement, any

17    such assignment would work a deception on the public to the extent that the "Romo marks"

18    were used in the promotion of any products by a company known as "Pure Romo Nutrition"

19    – a company that Romanowski claims he "was no longer associated with in any manner

20    other than as a shareholder" (apparently referring to RNI, LLC).  He claims that RNI's

21    action in carrying on the business as though Romanowski were still associated with the

22    company, when in fact Romanowski had terminated the alleged license, would make any

23    such purported assignment illegal and would work a deception on the public.

24         Romanowski claims, moreover, that the facts behind the purported assignment

25    support a finding that Incledon committed fraud in securing his (Romanowski's) signature

26    on the assignment, and as a result it is without force or effect.

27         According to Romanowski, after being informed that Romanowski was developing

28    his own nutritional formula, was setting up a business separate from RNI, and was

10

terminating the license agreement, Incledon (fearful of the prospect of continuing the business of RNI without the "Romo marks" and "Romo images") contacted the Katten Muchin Rosenman law firm in Chicago in May or June of 2006, and communicated with trademark paralegal Deborah Wing.

Romanowski claims that Incledon indicated to Ms. Wing that there was an immediate need for the preparation of an assignment of all Romanowski's interest in the "Romo marks" to RNI. Ms. Wing (on behalf of the law firm) allegedly prepared the assignment and sent it to Incledon. Mr. Mandell claims in his declaration that Ms. Wing told him that Incledon had told her that Romanowski had approved the assignment.

According to Romanowski, Incledon then left a voice message for Romanowski (in Hawai'i on vacation), which Romanowski described as having a "panicked" sound, advising that Romanowski had to immediately sign some document which had been "prepared by the lawyers" relating to "PUREROMO." Romanowski says he called his assistant Kelly Gray and told her to "take care of whatever it was that Tom needed done." Romanowski claims that he trusted Tom not to do anything to harm him. Ms. Gray states that she signed the name "Bill Romanowski" on the assignment. Somehow or other, the signature on the assignment was then notarized. Romanowski contends that Incledon then filed the assignment with the United States Patent and Trademark Office.

Romanowski claims that under these facts, all the elements of a void and unenforceable contract are present. He asserts, moreover, that his intention to void the purported assignment is clearly shown by the September 2006 e-mail sent by his attorney Floyd Mandell to Tom Incledon, and thereafter by the filing of the complaint in this action in October 2006.

Romanowski's third argument is that Incledon is an appropriate party defendant because of his active involvement in the use by RNI of the infringing marks. He asserts that a trademark (or a copyright or a patent) may be infringed by an individual as well as a corporation, including those individuals who are officers of a corporation.

Romanowski argues that there is a triable issue, but that "there can be no quarrel

11

about whether Incledon was the 'central figure.'" Romanowski asserts that as the managing member of RNI, Incledon did everything relating to the running of the business. He was the webmaster, and the person who determined to continue using "Pure Romo" after the termination of the license agreement. Based on this, Romanowski contends that Incledon is clearly a "participant" sufficient to be a party defendant in this case.

Romanowski's fourth argument is that he has alternative remedies that follow from infringement, and which do not require an expert for proof. He claims that an expert is not required to establish the remedies for infringement of trademarks – an accounting of profits realized by defendants by their infringement, and the losses to plaintiff associated with the infringement. In addition, he asserts, monetary damages are not an element of a case for trademark infringement. He claims that all he needs to show to recover is that he has a valid, protectable trademark, and that defendants' use of the trademark or a similar trademark causes a likelihood of confusion in the minds of the public.

In reply, defendants make four arguments. First, they contend that Romanowski has failed to meet the basic elements of a claim for infringement or unfair competition. However, they do not recite the elements of any of the "trademark infringement" causes of action. Second, defendants assert that Romanowski has failed to set forth evidence concerning his alleged damages.

Third, defendants contend that Romanowski's version of the facts regarding the assignment is inherently unbelievable. Defendants claim that some time in April 2006, Romanowski and Steve Mandell (his attorney/agent) contacted Mandell's relative Floyd Mandell (also an attorney) at the Chicago law firm of Katten Muchen Rosenman to handle certain trademark matter for RNI. The firm opened ten new matters for RNI, but took direction from Incledon. Incledon communicated with Floyd Mandell and his paralegal, Ms. Wing, concerning the assignment of trademarks to RNI.

According to defendants, Katten Muchen informed Incledon that the deadline to complete the paperwork for the assignments was July 24, 2006. Defendants assert that Incledon instructed Ms. Wing in May 2006 to move forward with preparing the paperwork,

1    and that Floyd Mandell and Ms. Wing prepared the assignments and forwarded them to

2    Incledon.  Defendants claim that Incledon forwarded Ms. Wing's May 2006 e-mail to

3    Romanowski, along with assignments from Outside 53, LLC, and from Romanowski

4    personally, on July 13, 2006.  They assert that Incledon then forwarded the July 13, 2006,

5    e-mail on to Ms. Gray on July 21, 2006, along with the attached assignments, and that Ms.

6    Gray faxed the executed, notarized assignments to Katten Muchen on July 24, 2006.

7    Defendants claim that Katten Muchen filed the assignments with the Patent and Trademark

8    Office on July 26, 2006.

9        Defendants assert that when Floyd Mandell sent an e-mail to Incledon on

10   September 18, 2006, stating that Romanowski intended to re-assign all of the trademarks

11   "currently owned by RNI, LLC" to himself, Incledon's counsel alerted Mr. Mandel to his

12   (Mandel's) ethical conflict in representing interests adverse to RNI.  Mr. Mandell states in

13   his declaration that he wrote back, stating that it was his firm's position that they did not

14   have a conflict representing Romanowski in a matter in which he was adverse to RNI,

15   because the firm at no time had ever represented Incledon or RNI.  He claimed that any

16   communication between his firm and Incledon, "and the related filings," were done pursuant

17   to their representation of Romanowski.

18       Thus, defendants assert, Romanowski's own evidence establishes that his attorneys

19   at Katten Muchen prepared and filed the assignment, with the knowledge of Romanowski's

20   other attorney Steve Mandell, and the authorized execution by Romanowski's assistant Ms.

21   Gray.

22       Defendants argue that the parole evidence rule prohibits a party from resorting to

23   extrinsic evidence of a prior oral agreement to contradict the plain and unambiguous terms

24   of a written contract.  They contend that Outside 53, LLC's assignment of all rights in the

25   "Pure Romo" trademark expressly stated that Outside 53, LLC, had filed specific trademark

26   registration papers with the Patent and Trademark Office.  They assert that Romanowski

27   cannot offer extrinsic evidence of an oral agreement between himself personally and

28   himself as president of Outside 53 LLC, to show that Outside 53, LLC, had no authority to

file or transfer the registration applications.

Defendants assert further that Romanowski's "evidence" of fraud and forgery by himself and his assistant does not negate the validity of the assignment. They claim that Romanowski's evidence establishes that his attorneys prepared the assignment, that he authorized his assistant to sign the assignment, that she did so with his authority, and then submitted it to his attorneys for filing.

Defendants note that Ms. Gray testified at her deposition that she could not recall any occasion when she sent out a document that she believed was false. Defendants argue, however, that Ms. Gray's admission in her declaration that she forged a legal document with her principal's authority, knew that the notary's seal was false, and sent the document to plaintiff's attorneys to be filed is inconsistent with her sworn deposition testimony and should be disregarded.

Defendants' fourth argument is that Romanowski's claim regarding the oral license neither proves his claims nor defeats defendants' motion. Defendants argue that Romanowski's "evidence" establishes only that he granted RNI a "naked license" during the period 2004 to 2006, and thus forfeited any rights in the "Pure Romo" mark.[1] Defendants contend that Romanowski's "oral license" to RNI contained no express right to control the quality of goods bearing that mark, and also assert that "inherently amorphous" terms about RNI being a "great company" are neither quantified or defined.

The court finds that summary judgment must be DENIED as to the first six causes of action because of the presence of triable issues of fact, which is compounded by the parties' use of inadmissible evidence to support their respective positions, and the parties' failure to address the elements of the various claims.

The court is not persuaded by Romanowski's argument that he, and not Outside 53, LLC, was the owner of the marks, nor by his argument that he granted Outside 53, LLC, an

---

[1] A trademark owner who "fails to exercise adequate quality control over [a] licensee"of a trademark creates a "naked license" and thereby abandons the trademark. Barcamerica Int'l USA Trust v. Tyfield Imps., Inc., 289 F.3d 589, 596 (9th Cir. 2002).

14

oral license.  As defendants note, the registration states that Outside 53, LLC, is the owner

of the marks, and the assignment to RNI states that Outside 53, LLC, is the owner (i.e.,

Outside 53, LLC, is the "assignor" and assigns "the entire right, title, and interest in" the

mark(s)).  However, evidence of the actual circumstances surrounding the various

assignments and purported licenses is murky, to say the least.

As for Romanowski's argument that Incledon is an appropriate "party defendant," the

court previously ruled that Incledon was not subject to the court's jurisdiction except with

the possible exception of the ninth through twelfth causes of action  (the computer fraud

claims).  Thus, of the first through sixth causes of action, only the claims against RNI

remain viable.

b.    "Romo images" claims

In the seventh and eighth causes of action, Romanowski alleges claims of trademark

infringement and unfair competition.  Romanowski claims that defendants used his name,

likeness and image without authorization in RNI's business following the point at which he

(Romanowski) "disassociated" himself from RNI in August 2006.

Defendants contend that the "images" Romanowski refers to as having been

misappropriated are a historical description of the founding of RNI found on RNI's website,

and RNI's sale of Romanowski's autobiography, ROMO, My Life on the Edge, on RNI's

website.

Defendants argue that summary judgment should be granted on these claims for

several reasons.  First, defendants assert, Romanowski has no evidence that he was

"disassociated" from RNI,[2] and has admitted that he had no objection to RNI using his

_____

[2]  Romanowski provides no evidence that ever took steps to withdraw from RNI, LLC,
in accordance with the terms of the LLC's Operating Agreement.  He also refers to himself as
continuing to be a "shareholder" in RNI.  Being a "shareholder" of an LLC is the same as being
a "member."  See PacLink Communications Int'l, Inc. v. Superior Court, 90 Cal. App. 4th 958,
963 (2001) (limited liability company is hybrid business entity formed under Corporations Code,
consisting of at least two "members" who own membership interests; limited liability company
has legal existence separate from its members, and its form provides members with limited
liability to same extent enjoyed by corporate shareholders, but permits members to actively
participate in management and control of company).

image while he was "associated" with the LLC.  They also contend that Romanowski

testified in his deposition that he did not know if he ever "disassociated" from RNI, and that

he did not know when he ever told anyone at RNI to cease using his image.  Thus,

defendants argue, there is no evidence to support the basic premise of the claim, or that

RNI's use of the "Romo images" was unauthorized.

Defendants' second argument is that although Romanowski apparently wants to

obliterate RNI and Incledon from his past experience, the fact remains that he

(Romanowski) was a founding member of RNI.  Defendants assert that RNI's website

simply reports this fact.

Defendants' third argument is that RNI obtained 25 copies of Romanowski's

autobiography from the publisher and that Romanowski directed RNI to give 15 copies

away for free as part of promotions he set up.  Defendants contend that RNI simply acted

as a retailer of the book, by selling its own inventory.  Defendants also note that in the

book, Romanowski recommends Incledon and his nutritional services and further promoted

Pure Romo Nutrition and its products.  Defendants assert that California law does not

prohibit RNI from using its own inventory, which recommends RNI's website and products,

to promote itself and its managing member on its own website.

Defendants' final argument is that Romanowski does not articulate any actual

damages suffered as a result of this alleged misappropriation, and has not disclosed any

damages expert(s) in this litigation.

In opposition, Romanowski contends that genuine issues of material fact preclude

summary judgment as to these two causes of action.  He argues that all he needs to show

to prevail on these claims is some unauthorized use of his "persona."  He claims that even

if the purported assignment were considered valid, defendants would have rights in the

"Romo marks" only pursuant to the assignment.  He claims that the only "Romo mark"

touching on his identity was the mark "Pure Romo," and maintains that any other reference

by defendants to his "persona," including his name, nickname or likeness, "would not have

been subject to any [p]urported [a]ssignment and thus even under a best case analysis for

16

United States District Court

For the Northern District of California

1    [d]efendants, such use would violate the [p]ublicity [r]ights of [p]laintiff as alleged."

2         In support of this argument, Romanowski cites from <u>McCarthy on Trademarks</u>

3    § 28.7, "Persona and Human Identity," which states that "[t]he term 'persona' is increasingly

4    used as a label to identify the cluster of commercial values embodied in personal identity.

5    There are many ways in which a 'persona' is identifiable: name, nickname, . . . and other

6    indicia closely identified with a person."  Romanowski claims that the word "Romo" is

7    "known in the conventional wisdom as the nickname for Bill Romanowski, and that any use

8    of the word 'Romo' on the RNI website along with other references to Bill Romanowski can

9    only lead the viewer to one conclusion regarding Bill's association with RNI."

10        Romanowski includes a declaration from his attorney Dan Price, attaching as

11   exhibits a copy of a page from www.wikipedia.org on "Bill Romanowski," stating that he is

12   "commonly known as 'Romo,'" and a copy of the results page from a Google search for

13   "Romo romanowski nickname."  Romanowski also references copies of web pages from

14   the RNI website as they existed in, respectively, October 2006 and July 25, 2007.

15        In reply, defendants note that Romanowski does not dispute that he promoted

16   Incledon and RNI in his autobiography, and does not dispute that he was a founding

17   member of RNI, and assert that he continues to attempt to "blur the edges on his current

18   relationship with RNI" because of the contract claims he is facing in litigation currently

19   pending in Arizona.

20        Defendants note further that although Romanowski claims he is no longer

21   associated in any manner with RNI other than as a shareholder," Romanowski remains a

22   50% member of RNI, pursuant to the Operating Agreement.  Moreover, defendants assert,

23   Romanowski does not dispute that RNI is permitted to inform the public concerning its

24   origins and history, and that he (Romanowski) heavily promoted RNI's products and

25   scientific founder (Incledon) in his book.  Defendants contend that the motion should be

26   granted as to these two causes of action because Romanowski's opposition is devoid of

27   any evidence or argument concerning exactly how RNI's website is violating his "privacy"

28   rights.

17

The court finds that the motion must be DENIED as to the seventh and eighth causes of action. While it may be true, as defendants argue, that Romanowski's only challenges are to the historical description of the founding of RNI found on RNI's website, and to RNI's sale of Romanowski's autobiography on RNI's website, and that Romanowski fails to identify the exact instances of the alleged trademark infringement, the court finds that triable issues remain, based on the confusion regarding the alleged oral license and the assignment, discussed above with regard to the first through sixth causes of action.

c.     Computer fraud claims

In the ninth through twelfth causes of action, Romanowski alleges claims of invasion of privacy; common law invasion of privacy (ROMO e-mail); common law invasion of privacy (ROMO marks and images); and conversion. Romanowski alleges that defendants engaged in certain wrongful conduct while manipulating his personal computer at his home in California. Thus, these claims are based on the allegation that Incledon configured Romanowski's home computer (while setting up the e-mail system at Romanowski's request) so that every e-mail Romanowski sent from that computer would be copied to RNI's server.

Defendants argue that Romanowski has no evidence that Incledon did anything improper to his computer, no evidence that Incledon or RNI ever received any of his e-mails, and no evidence that Incledon or RNI ever read any of his e-mails.

In opposition, Romanowski asserts that there are genuine issues of material fact pertaining to these claims. As evidence, Romanowski relies on his own declaration. He states in his declaration that by May 2006, it had become clear to him (and also Incledon) that the business of RNI "was not working out." He claims that because RNI "was no longer a great company," he determined that "[t]he pre-conditions for RNI's continued use of the Endorsement Services under the License Agreement . . . had failed."

Romanowski states that during the course of two meetings in California, he told Incledon he was starting a new company and would no longer be associated with RNI. He claims that he had invited Incledon to the meetings "as a potential employee of the new

18

company I intended to form."

Romanowski states that Incledon "appeared to clearly understand as a result of the two meetings in California, that in effect the License Agreement was being terminated" and that the "Romo marks" and his (Romanowski's) "endorsement" of RNI and its products "would all be lost to RNI." He claims that Incledon "seemed unhappy about all of this even as he was being considered as the Chief Technical Officer of the new company." Romanowski asserts that "[i]t was clear from what Tom said and his body language that Tom Incledon was not happy with these realities."

Romanowski asserts in his declaration that on July 12, 2006, Incledon came to his home in California for a meeting regarding the new company, and that during the evening Romanowski mentioned that he needed help setting up his new computer. Incledon "graciously offered to help out" and went into the room where the computer was, and worked on it for about an hour. Romanowski states that he did not know what Incledon was doing in the room.

Apparently Incledon could not get the e-mail to work properly, and took the computer with him to Arizona to work on it. Romanowski states in his declaration that Incledon "returned" the computer after he was finished working on it. Romanowski claims that no one made any repairs or changes to the computer between the time he got it back from Incledon and the time he became aware of the "fact" that his e-mails were being copied to RNI's server.

Romanowski's belief that Incledon set up the computer so the e-mails would be copied to RNI's server is based on the following. Romanowski states that "[a] couple of months later and in the Fall of 2006," he sent a list of ingredients to a consultant by e-mail from his computer. He claims that he did not send the list of ingredients to Incledon. Nevertheless, he asserts, the following day, Incledon left a voice message for him (Romanowski) "stating in effect that I shouldn't be sharing ingredients with anyone."

Romanowski states further that while he "didn't make much of a connection at the time," when he later learned that his e-mails were being copied to RNI's server, it "became

19

apparent" to him that the ingredient list he had sent to the consultant had also gone to Incledon because of the way Incledon had set up the e-mail system on the computer. Romanowski claims he asked the consultant whether he had shared the list with Incledon, and the consultant said "no." Romanowski asserts that "[t]he conclusion was inescapable that Tom Incledon had set up my personal computer e-mail accounts in such a manner that he would have access to my e-mail exchanges."

Romanowski states in his declaration that he was later told by Ms. Gray that a technician had told her that because of the way the computer was configured, any e-mails that Romanowski sent or received would be copied to servers to which Incledon had access. He includes a declaration from Ms. Gray stating that she was present at the same meeting at Romanowski's house; that she was aware that Incledon was working on Romanowski's computer, but "did not observe with any detail what he was doing."

Ms. Gray states further that about a month after Romanowski received the computer back from Incledon, Romanowski complained to her that he was having problems connecting to the Internet for e-mails, and that she discovered that "two servers were processing Bill's e-mail messages, one was the 'Mac.com' server holding Bill's personal e-mail address, the other was the 'pureromonutrition.com' e-mail server." She claims that Romanowski's business did not have a "pureromonutrition.com" server, and that she called SBC Global (the ISP), and spoke to a technician who confirmed that any e-mails sent or received by Romanowski's computer would go through both servers, one of which Ms. Gray knew to be accessible by Incledon.

Romanowski argues in his opposition to the motion that "[t]he circumstantial evidence is strong, but at a minimum and for purposes of this motion, creates a genuine issue of material fact." Relying on Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1029-30 (9th Cir. 2006), he claims that circumstantial evidence alone may create a genuine issue of material fact. In addition, he cites Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003), for the proposition that in civil litigation generally, circumstantial evidence "may be more certain, satisfying and persuasive than direct evidence."

20

However, both these cases involve employment discrimination claims brought under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-5, et seq. Cornwell cites Desert Palace for the proposition that "a plaintiff may rely on either circumstantial or direct evidence to defeat a motion for summary judgment in a civil action under Title VII" because "a plaintiff suing under Title VII may prove his or her case using either circumstantial or direct evidence. Cornwall, 439 F.3d at 1029-30 (citing Desert Palace, 539 U.S. at 100). Title VII jurisprudence is sufficiently distinct from any analysis the court might apply to the claims alleged in this action as to make these two decisions completely inapposite.

In reply, defendants argue that Ms. Gray's declaration should be disregarded because it is unsigned, and that her statements to the unidentified technician and the technician's statements to her are inadmissible hearsay.

As for Romanowski's arguments, defendants contend that Romanowski's suspicions, based on the fact that Incledon asked him not to disclose ingredients to anyone a day after he had sent an ingredient list to a consultant, are not "evidence" of anything. In addition, defendants assert, the consultant sent an e-mail to Romanowski on August 6, 2006, in which he (the consultant) commented on the ingredients of RNI's formula, and that the same day, Romanowski forwarded the consultant's e-mail to Incledon and to a third party, who also forwarded it to Incledon. Thus, defendants assert, Romanowski was plainly the source of the information to Incledon, and Incledon did not receive the information as the result of some computer fraud scheme.

Defendants assert further that Romanowski has admitted that he has no evidence from the actual computer to support his claims; that Romanowski has failed to address the issue of damages (how many e-mails are alleged to have been intercepted, and during what period); and that Romanowski has produced no evidence to show that any manipulation of the computer occurred in California (despite the court's previous denial of Incledon's motion to dismiss for lack of personal jurisdiction as to the computer fraud claims on the basis that the alleged manipulation of the computer might have been done in California as Romanowski claimed). Defendants contend that Incledon should now be

1   dismissed for lack of personal jurisdiction, as Romanowski has not met his burden of

2   showing that the alleged manipulation of the e-mail configuration occurred in California.

3        The court finds that the motion must be GRANTED as to the ninth through twelfth

4   causes of action.  As noted above, although the court previously found that it had personal

5   jurisdiction over Incledon as to these causes of action, that ruling was in the context of a

6   motion to dismiss for lack of personal jurisdiction, where the court is required to resolve

7   conflicts contained in affidavits in favor of the plaintiff.  See Schwarzenegger v. Fred Martin

8   Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

9        In the present motion, however, defendants have provided a declaration from

10  Incledon stating that he did not make any modifications to plaintiff's computer in California,

11  while Romanowski has provided no evidence, apart from his own suspicions, that Incledon

12  engaged in activity in California with regard to the computer fraud claims.  Thus, the court

13  finds that Incledon must be dismissed for lack of personal jurisdiction.

14       As for RNI, plaintiff has provided no evidence supporting RNI's liability for the claims

15  alleged in the ninth through twelfth causes of action.

16                                    **CONCLUSION**

17        In accordance with the foregoing, the court finds that the motion must be DENIED

18  as to the first through eighth causes of action, and GRANTED as to the ninth through

19  twelfth causes of action.  In addition, Incledon is DISMISSED from the action.

20       The court wishes to add, however, that summary judgment could likely have been

21  granted on all claims, had it not been for the deficiencies in the presentation of evidence,

22  and the defendants' failure to address all the elements of each cause of action.

23

24  **IT IS SO ORDERED.**

25  Dated:  February 11, 2008

26                                    _____
                                      PHYLLIS J. HAMILTON
27                                    United States District Judge

28